and Tammy Koch versus Andrew Saul, Commissioner of the Social Security Administration. All right. Mr. Coleman, please proceed. May it please the court. I'm attorney Nicholas Coleman. I'm co-counsel with Greg Thurman. I represent Ms. Tammy Koch. This case involves Ms. Koch as a pro se climate in a closed period case for social security benefits, disability insurance benefits to be exact. Ms. Koch applied for disability insurance benefits because of severe impairments with her back among other limitations, but that's been the main concern. The ALJ in this case originally found that Ms. Koch was disabled from February 1st through December 13th, 2016. He found that she was disabled because pain would result in consistent absenteeism precluding her ability to work. However, he found that medical improvement occurred on December 13th, relying on a report, postoperative report filled out by a nurse that we've both argued this to death about the five points of the law, but it really boils down to is that the ALJ in this case used unreliable evidence that included internal inconsistencies and it was in fact inconsistent with evidence outside of it to find that she experienced medical improvement and that her pain would no longer result in consistent absenteeism. So Council, what standard is the ALJ required to apply in determining whether the period of disability had ended? It requires them to utilize the medical improvement standard and there has to be evidence showing that there's been an improvement in their condition either by symptoms, objective signs, diagnostic testing, which show that there's been an increase in her ability to work. In this case, he found that her disability was premised on pain, which in itself is a subjective symptom. The record that he relied upon she reported her pain was 8 out of 10. He focuses on this record and the only indication that there was any improvement, if you want to say that, is that she was, her nurse noted, very satisfied with her overall surgical outcome. So was there a conclusion by any medical provider that the ALJ relied on that the pain had subsided or her symptoms had improved on the pain front? Quite the opposite. This was a two-page report and the ALJ actually ordered a consultative exam with a orthopedic surgeon that was two weeks later who actually filled out a very thorough report, actually went through a full physical examination and felt compelled enough to say that Ms. Koch could no longer work. This report that he relied on is ambiguous at best. And when you, I'm sorry, go ahead Chief. What did the ALJ do with the consultative surgeon's report? He essentially, he didn't say reject, he said that he adopted some of his findings but didn't adopt all of his findings because it was inconsistent with the two-page internally inconsistent report. That was his basis. What he did was, is he gave deference to the opinion of a nurse who under Social Security regulations is not even considered an acceptable medical source whose opinion can even be weighed. He gave that deference over that of a orthopedic surgeon who specializes in the exact conditions that Ms. Koch suffered from. She had back surgery in October of 2016 and he did a full physical examination and determined that based on what he saw in that examination, her inability to get in and off the table, utilization of a walker, her limited range of motion in her back in all planes, it was his opinion that she could not work. And then he provided an even more detailed, they call it a residual functional capacity, which outlines every work requirement, physical work requirement. Did the ALJ then have to compare that point in time to a previous point in time in order to determine whether there was an improvement? It has to be improvements from some point, correct? Yes, ma'am. And so was that analysis done? No, not from what I can tell. The only analysis that I can see from the decision is that he just made a one-sentence reliance on this ambiguous report. And then he used this report just based on the sentence that says that she's significantly, or sorry, satisfied with the overall surgical outcome to discredit the orthopedic surgeon and he used this one sentence to discredit her subjective compliance regarding her pain in the period of purported improvement. That's all there is to it. All right. That's the, that the analysis is limited to that. I'll reserve, I'd like to reserve a time for the rebuttal, please. All right. Thank you, Mr. Coleman. Ms. Selby. May it please the Court. Jennifer Selby on behalf of the Commissioner for Social Security. As has already been indicated by the arguments that's gone forward and the questions that the ALJ properly determined, that appellant experienced medical improvement of her back condition as of the time of her two-month post-lumbar fusion surgery follow-up appointment with Dr. Ramos. Medical improvement has to be shown based on a decrease in severity of impairments that were and symptoms in the medical record. It requires that the ALJ compare the current, the appellant current condition with the condition as it existed during the period of recognized disability. Here, the medical record specifically showed at the time of the December 13, 2016 follow-up with Dr. Ramos that appellant was no longer complaining of tenderness with range of motion, which she had done for a long period of time before her lumbar fusion surgery. There was also no evidence in his examination findings of muscle spasms, which had been reported as early as August 16 to Nurse Branscombe when she saw the plaintiff before surgery. Finally, Dr. Ramos continued to note that an intact sensation. She had normal gait, which is especially important to notice as it is inconsistent with the findings of the consultative examiner at the time of his January or late December 2016 examination. And there's absolutely no mention of an assistive device in Dr. Ramos' records. Furthermore, Dr. Ramos' record shows that plaintiff was reliant on less medication for relief of her nerve pain. In fact, she was taking two-thirds less gabapentin than she'd taken prior to her surgery to successfully manage her symptoms. It's still a significant amount of gabapentin though, isn't it? It is a significant amount of gabapentin, but it just goes to show that she was taking less than she needed to before. And the objective medical evidence from the x-rays showed that, you know, absent, aside from the post-surgical changes showing intact hardware, there was no evidence of any spinal instability or continued degenerative disc disease, specifically the bulging discs that had been present in the prior imaging before she underwent corrective surgery. Most importantly, plaintiff herself admitted that the surgery alleviated her symptoms. She told this to Dr. Knight in October when she went to have her staples removed, and she reported to Dr. Ramos at that December 13th follow-up that she experienced significant symptom improvement and that she was very satisfied with her surgical outcome. And that appears not only in her history of present illness for her report, but also in Dr. Ramos' assessment at the conclusion of the appointment, which is tantamount to him making an opinion that her symptoms had improved following that surgery. And I would like to point out an inaccuracy in opposing counsel's statement that appellant saw a nurse at the time of that two-month surgical follow-up. She did, in fact, see Dr. Ramos. The notes were simply scribed by the nurse. When the ALJ determined that Dr. Ramos' notes were contradictory, for lack of a better word, here, than the later December 29th report, what did the ALJ say about why it put more weight on the former rather than the latter? My recollection of the ALJ's decision was that he did not explain in great detail his basis for doing so, but I do believe that he did say that he was reliant on the treating physician's opinion regarding her increase in condition. And as we all know, the opinion of a one-time examiner cannot take precedence over the opinion of a treating physician. What about her pain? Was that factored in, do you think, appropriately or under the law, the way the subjective nature of pain is to be assessed and factored into the reports? Did the ALJ do an adequate job of that? I think that he did so. If you look at the portion of the ALJ's decision, in particular, where he discusses medical improvement, he said that he'd looked at the evidence in the earlier portion of his decision, and he specifically determined that, though he didn't discount appellants continuing reports of pain entirely, an inability to work without some pain or discomfort isn't a sufficient reason to find that a claimant was disabled under the act. And he further stated that the available objective medical evidence from that date indicated that her physical impairments had improved secondary to her back surgery and a reasonable recovery time. How do you deal with this sort of 8 out of 10? It's so subjective, and we toss out a number of how severe the pain is, but did that significantly, her self-reported pain, did that significantly change after the surgery? We don't have a great deal of records that were officially part of the record, and of course it's the commissioner's position that the post-decision evidence is not relevant to the court's adjudication here. But I think it is important to note that she did continue to make some complaints of pain, but elsewhere in the record, she'd also indicated that she had an even during her period of disability and during the period after that to maintain her activities of daily living and to engage in outside activities such as attending church and attending her son's sports activity. Can I ask a procedural question just so I understand where we are in this? I understand that this case, this appeal only addresses the end of December of that year, correct, of 2016. So that if I understand the appeals counsel's response, you would mention the additional evidence that she wanted to present, that she would have to file a new request for disability benefits to start up after that date. Do I understand that time for this case? That is what the appeals counsel's decision stated. And all candor, your honor, the ALJ's decision, if you look at the conclusion of it, he said that his decision on the medical improvement finding ran from December 13, 2017 through the date of his decision in September 2017. Have I answered your question adequately, your honor? I'm not sure I understand the difference, but it's fine if there's other matters you want to address. I was just trying to get a sense of where we were just for the impact of this particular case and the impact of any kind of counsel. Did the ALJ make any specific findings about why he discounted the opinion of the consultative doctor? He said that it was based on or it was based on a one-time examination and he compared it to Dr. Ramos' findings, the findings of the treating physician and Dr. Ramos' statement that the appellant had experienced significant improvement in her symptoms following the surgery. And if you'll note, when you go back and look at Dr. Hongharan's medical findings, you know, granted there are significant findings in there such as the restricted range of motion, but that's to be expected after a spinal fusion surgery. But what he did not address were the specific findings that Dr. Ramos himself had made that related to the fact that she was no longer complaining of tenderness with range of motion and the fact that absent from Dr. Ramos' findings was any evidence of muscle spasms, which also Dr. Hongharan had not noted either. And in addition, there was the normal gait and the fact that when she appeared at Dr. Ramos' appointment, she was not reliant on an assistive device. All right. Thank you, Ms. Selby. Thank you. Mr. Coleman, your rebuttal. Yes, sir. With respect to Dr. Ramos' nurse's progress report, it is an outlier. It is one of the few reports that show physical examinations where they're all normal. The report really begs more questions than it answers. Did they actually perform a full physical examination? We don't know, but we do know that it is inconsistent with almost every other physical examination on record, and it's internally inconsistent with Ms. Koch's allegations that her pain is 8 out of 10. So if we're talking about improvement, we're talking about 10 out of 10. If we're talking about improvement, if we're talking about improvement because the ALJ's RFC is based on her pain, then it hasn't subsided, and it definitely has not subsided to the point where she's going to be able to return to work. There was a question asked about the time frame, and I'd like to see if I can help explain that. The ALJ found that she reached medical improvement two weeks prior to her date last insured. He rendered his decision almost a year later. What that means is that she has to prove that she's disabled before December 31, 2016. At this juncture, unless this court remands or reverses it and approves for benefits, she's out. All of the money that she's paid into the Social Security system working over the course of her life, it's vapor. She has to prove that she's disabled before the ALJ's decision and before that date last insured, because otherwise you'd have to reopen it, and it's not possible. It's precluded by administrative res judicata, and for the judge to render a decision based on inconsistent evidence on medical improvement, she can go. Ms. Koch deserves another shot and deserves a decision that is based on substantial evidence, not a scintilla. Thank you. Thank you, Mr. Coleman. I don't see any questions from the other panel members, so court wishes to thank both counsel for the argument you provided to the court this morning and the briefing which you have submitted. We will take the case under advisement and render a decision in due course.